3 So.2d 426

### INGRAM v. STATE.

#### 6 Div. 560.

Court of Appeals of Alabama.

March 4, 1941.

Rehearing Denied March 25, 1941.

Reversed After Remandment June 10, 1941.

Rehearing Denied June 24, 1941.

Henry H. Mize and Jonas J. Spiro, Jr., both of Tuscaloosa, for appellant.

Thos. S. Lawson, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

It appears from the record, that this appellant was tried jointly with one W. S. Brewer, upon an indictment against each of them, wherein they were charged with the offenses of petit larceny, embezzlement, and extortion. Each offense as charged was a misdemeanor.

The indictment upon which appellant was tried was unusual in that a misdemeanor only was charged, as stated, yet it contained 29 separate counts, and, as transcribed in the record, consumed more than eight pages of the transcript. While, as stated, such an indictment in a charge of one misdemeanor is unusual, yet we regard the action of the excellent solicitor who drew the indictment as being highly commendable in taking the precaution, although very laborious, to formulate the indictment upon the facts at hand, so that it would properly charge some offense upon the different phases of said facts.

Before pleading to the indictment, the defendant interposed demurrer thereto based upon some 28 or more separate and distinct grounds. The demurrer was sustained to several counts of the indictment, whereupon said counts were nol prossed by the court upon motion of the solicitor. There is no necessity to particularize these counts, as will hereafter be noted.

The case was tried by the court without a jury and the opinion of the court was that the defendant was guilty of extortion, and judgment of conviction was accordingly pronounced and entered. By said judgment the defendant was acquitted of all offenses charged in the indictment, other than as stated, hence the questions pertaining to all of the counts in the indictment other than those charging extortion may be pretermitted.

It is tacitly agreed, and understood, and so stated by respective counsel that the counts in the indictment which charge the defendant with the offense of extortion were as for a violation of Section 4023 of the Code 1923, Code 1940, Tit. 14, § 160, which provides: Any justice of the peace, clerk, sheriff, or other officer, who is by law authorized to receive fees for services rendered by him in his official capacity, and who knowingly takes a fee or fees for any service not actually rendered by him, or knowingly takes any greater fee or fees than by law allowed for any service actually rendered by him, must, on conviction, be fined not less than twenty nor more than five hundred dollars, etc.

In connection with the foregoing, the Attorney General makes the following insistences in the brief for State, viz:

"The only counts in the indictment to be considered on this appeal are the three counts charging extortion, as the appellant was acquitted of petty larceny and embezzlement.

"We wish to quote the three counts in the indictment charging extortion as follows:

" '25. The Grand Jury of said County further charge that before the finding of this indictment, Murphy Ingram, alias Robert Murphy Ingram, who was then and there, on, to-wit: April 22, 1939, a Dep-

uty Sheriff of Tuscaloosa County, Alabama, did then and there, on to-wit; April 22, 1939, unlawfully take, by color of his office as said Deputy Sheriff of Tuscaloosa County, Alabama, three one ($1.00) dollar bills, lawful paper money of the United States of America, commonly called, "greenback," and one silver dollar, lawful money of the United States of America, all of the value of four ($4.00) dollars, which was not due to him, or which was more than was due to him, or before it was due to him, from Bill Myree.

" '26. The Grand Jury of said County further charge that before the finding of this Indictment, Murphy Ingram, alias Robert Murphy Ingram, who was then and there, on, to-wit; April 22, 1939, a Deputy Sheriff of Tuscaloosa County, Alabama, did then and there, on, to-wit; April 22, 1939, unlawfully extort, by color of his office as said Deputy Sheriff of Tuscaloosa County, Alabama, from Monroe Murphy, four one ($1.00) dollar bills, lawful paper money of the United States of America, commonly called, "greenback," of the value of four ($4.00) dollars, which was not due to him.

" '29. The Grand Jury of said County further charge that before the finding of this Indictment, Murphy Ingram, alias Robert Murphy Ingram, being a Deputy Sheriff of Tuscaloosa County, Alabama, knowingly took from Monroe Murphy, four one ($1.00) dollar bills, lawful paper money of the United States of America, commonly called, "greenback," of the value of four ($4.00) dollars, as his fee for making an arrest, which service was not actually performed by him, or which was a greater fee than was allowed by law for the said services, or was a fee other than allowed by law for said services rendered by him.'

"We respectfully insist that the counts above are substantially in the code form and that said counts were not subject to the defects pointed out by the appellant's demurrer, which the trial court properly overruled. We respectfully insist that an indictment following the form prescribed by the Legislature is sufficient.

"We wish to call the court's attention to the code form of an indictment for extortion, which is as follows:

" 'A. B., being a justice of the peace of said county, knowingly took from C. D. five dollars for the issue of a search warrant, being a greater fee than was by law allowed for such service.'

"We have carefully noted the arguments advanced by learned counsel for the appellant as to counts 25, 26 of the indictment being defective in that they fail to charge that the appellant knowingly took or extorted, but we respectfully insist that count 29 substantially follows the code form and that the defects that have been raised as to counts 25 and 26 are not applicable to this count."

It will be noted from the foregoing it is in effect conceded that counts 25 and 26 of the indictment were defective, and subject to the demurrer interposed. This narrows the question down to the proposition, as to whether or not count 29 of the indictment, is sufficient.

An essential element of the offense denounced by code section 4023, supra, is, that the act complained of must be knowingly done. Count 29 of the indictment so charges, but the vice of said count, aside from other infirmities, is that the crimes attempted to be charged were by disjunctive averments in the alternative, one of which included acts not prohibited by the statute in question. It is axiomatic when offenses are charged in the alternative, each alternative must state a complete offense under the law, and failure to do so renders the entire count defective. Doss. v. State, 23 Ala.App. 168, 123 So. 237; Gilbreath v. State, 23 Ala.App. 162, 122 So. 309; Dix v. State, 8 Ala.App. 338, 62 So. 1007; Abercrombie v. State, 8 Ala.App. 326, 62 So. 966; State v. Nix, 165 Ala. 126, 51 So. 754; Watson v. State, 140 Ala. 134, 137, 37 So. 225; Raisler v. State, 55 Ala. 64; Horton v. State, 53 Ala. 488; Noble v. State, 59 Ala. 73; Pickett v. State, 60 Ala. 77; Mitchell v. State, 2 Ala.App. 147, 148, 56 So. 56; Ex parte Stollenwerck, 201 Ala. 392, 78 So. 454.

The statute in question, as stated, makes it an offense (1) for any officer, etc., to knowingly take a fee or fees for any service not actually rendered by him, or, (2) to knowingly take any greater fee or fees, than by law allowed for any services rendered by him, etc. It does not prohibit the taking of fees before it was due to him, or a fee other than allowed by law for said services rendered by him.

As stated, in the case of Watson v. State, 140 Ala. 134, 137, 37 So. 225, 226: "Had the charges against the defendant been confined to transactions violative of the operative parts of the statute, the indict—

ment would have been free from objection; but those charges having been made in the alternative, and having included acts not prohibited by any valid law, the result was that no offense was charged with certainty, and the indictment was therefore subject to the demurrer. Raisler v. State, 55 Ala. 64."

The court in overruling demurrer to above quoted counts of the indictment committed error.

This is conclusive of the instant appeal, and renders unnecessary a discussion of the other numerous insistences of error here presented.

Reversed and remanded.

### After Remandment.

By reference to the opinion heretofore rendered, it will be noted this court dealt only with the question of the sufficiency of the indictment, to which demurrer had been interposed. We there held that count 29 of the indictment was defective and subject to the demurrer. On certiorari, the Supreme Court entertained a different view upon this, the sole question upon which our opinion was rested. The writ of certiorari was granted, 241 Ala. 166, 3 So.2d 431, to which we must accord, under the provisions of Section 7318, Code 1923, Code 1940, Tit. 13, § 95. The cause being remanded to this court, we will now proceed to the consideration of the case upon its merits. In this connection numerous questions are presented for review, and upon which appellant relies for a reversal of the judgment of conviction in the lower court, from which this appeal was taken.

This appellant was tried jointly with W. S. (Jack) Brewer, who was also convicted, and here appealed.

The cause was tried in the lower court without the intervention of a jury.

Every count in the indictment, except count 29 thereof, has been eliminated by demurrer, adjudication, etc. Therefore, the only question here on appeal is whether or not the conviction of this defendant of the charge contained in said count (29) of the indictment was without prejudicial error in contemplation of law.

Count 29 has been quoted in full in the original opinion. In this case, as in all criminal cases, the burden rested upon the State to offer sufficient legal evidence to sustain every material allegation in said count upon which he was put to trial.

The evidence in this case discloses that at or near midnight April 22, 1939, the two defendants accompanied by another officer, not indicted, went to the place in question and these two defendants, Ingram and Brewer, both officers of the law, "raided" a crap game where about ten negroes were admittedly gambling with dice. The officers arrested each of the participants and were making preparation to take them to jail, when one, or more, of the prisoners asked the officers to permit them to make a cash bond to keep them from being locked up in jail. An agreement was finally reached and seven of the ten prisoners deposited or put up $4 each as a cash bond, which was the amount agreed upon. The other three prisoners were unable to put up the necessary amount, but these three were also liberated when kinspeople, or other outside parties "stood" for them, for their appearance in court. Everything said and done at the time and place in question, being of the res gestae was admissible in evidence. There was but slight conflict in the evidence. It was shown, without dispute, or conflict, that all of the money $28, was handed to defendant Brewer, on that occasion, who in addition to being a deputy sheriff of the county, was also deputy constable of Beat 16, Tuscaloosa County, and as such was working under the regular constable of that beat or precinct, a Mr. Bob Ingram, a man of about 72 years of age, who was at home sick in bed at that time. As stated, the money in question, in which was included the four dollars paid by the alleged injured party Monroe Murphy, was paid to deputy constable Brewer, at or about midnight of April 22, 1939, and there is no semblance of dispute about the fact that all of said money was carried to constable Ingram early Sunday morning, the next day, or 23rd of April, 1939, and was turned over to said constable as being the proper person to have the custody of the money, pending the outcome of the trial of the several persons who had deposited it with deputy constable Brewer.

The record further discloses, without dispute, that the money in question, which as has been stated, included the four dollars involved in count 29 of the indictment, was turned over to the justice of the peace of said precinct, by constable Ingram; and that the justice of the peace, when it was ascertained the alleged offenses of the arrested persons were committed in beat 15, instead of beat 16, paid the money in court to the justice of the peace in the latter precinct. Later, all of said money was returned to the de-

fendants, including, of course, Monroe Murphy, the alleged injured party, by the last designated justice of the peace.

Appellant Ingram has lived in Tuscaloosa County, Alabama, practically all his life, as the evidence shows. A large number of witnesses from practically all walks of life of said county, testified that they knew his general character, and that such character, was good. No testimony to the contrary, and he, the appellant, among other things, testified: "There were ten negroes in the game, and all of them were placed under arrest. We told them that we would have to take them to jail unless they made sufficient bond to keep out of jail, and we found out we did not have any bonds with us and told them they would have to come to jail anyway. I looked for the bonds, but did not have any with me. Mr. Brewer also stated that he had none. The negroes asked if there was something they could do. We told them there was nothing to do unless they made bond, and we did not have a bond, and they would have to come to town."

Appellant further testified, "I never laid any claim to the money, and never had my hands on any of it at all. * * * I never did make any agreement to receive any money from any of the negroes, and none of it even touched my hands. The only thing I ever did was make the arrest. The Sheriff of Tuscaloosa County is on a salary basis, and so was I. I did not receive any fees for making the arrest in this case, and I was on a salary basis. I do not even get witness' fees in cases. No fees were paid to us for making the arrests." There was no dispute as to the foregoing. `

■■ The gravamen, of the offense here charged, and the essential and controlling allegation of the count of the indictment, was that the defendant took from Monroe Murphy, four one dollar bills, etc. as his fee for making an arrest. Before a conviction could be had upon said charge, as it appears in said count, the State was under the burden to prove, as stated hereinabove, by the required measure, the truth of said averment. In this case there is no such testimony, nor is there any testimony tending to sustain said charge, hence the charge, or accusation above quoted, must fail for want of proof to sustain it. There is not a word of testimony in this case, which shows or tends to show that anything was said or done as to a fee for making an arrest as here complained. The court below

had no authority to render the judgment of conviction from which this appeal was taken; for a conviction cannot be rendered in a haphazard manner, as here appears, or on mere suspicion, guesswork, conjecture or surmise, however, strong, or where one material element of the crime rests alone on mere suspicion. A conviction must be based on facts tending to show guilt, and so proven by legal evidence to a moral certainty and beyond all reasonable doubt.

■■ If it should be contended that the two law officers were without authority, under the law, to accept a cash bond, that fact would be immaterial here, for the defendants were called upon to answer and defend only the specific charge contained in the indictment upon which they were tried. Moreover, the offense of extortion may not be maintained against an officer for accepting a cash bond for the appearance of an accused in court to stand trial. We need not elaborate on this question as we deem the case of Holt v. State, 11 Ga.App. 34, 74 S.E. 560, a direct and conclusive authority on this question. We are clear to the opinion the Holt case, supra, is correct and sound, and it is practically identical and upon "all fours" with the case at bar, on the question of accepting a cash bond from defendants.

As stated at the outset, in this opinion this appellant, and W. S. alias Jack Brewer v. State, post, 223, 3 So.2d 432, were jointly tried in the court below, and upon the same evidence, separate judgments of conviction were pronounced and entered, against each of the defendants. Before submission, it was agreed and understood that this court should consider the evidence in this case as applying to both of the defendants, and that the decision and order of this court in the case at bar, shall also be determinative of the Brewer case, supra.

■ As herein stated, the judgment of conviction in the lower court, from which this appeal was taken was laid in error for the reasons announced. Under the law the duty devolves upon this court, on appeal, to here render such judgment as the law demands. It is therefore ordered and adjudged that the judgment of conviction from which this appeal was taken is reversed, and a judgment here rendered discharging appellant from further custody in this proceeding. Robison v. State, ante, p. 12, 200 So. 626, certiorari denied 240 Ala. 638, 200 So. 629.

Reversed and rendered.